IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

_____

IN THE MATTER OF:

J.B., STUDENT, BY AND THROUGH HIS PARENTS,
M.B. AND JO.B., AND M.B. AND JO.B., INDIVIDUALLY

*PLAINTIFFS,*

v.                                                      NO. _____

BEDFORD COUNTY SCHOOLS                                  JURY DEMANDED

*DEFENDANT.*
_____

# COMPLAINT
_____

**COME THE PLAINTIFFS,** by and through counsel, filing this Complaint. They respectfully show:

## I. PARTIES, JURISDICTION, AND VENUE

1. J.B. is a minor child who attends elementary school in Shelbyville, Tennessee. His parents are M.B. and Jo.B., respectively. J.B. and his mother, M.B., reside in Bedford County, while his father, Jo.B., resides in the state of Ohio.

2. Bedford County Schools ("BCS") is a governmental subdivision of the State of Tennessee, duly authorized to administer public schools within Bedford County. It receives federal financial assistance subject to Section 504 of the Rehabilitation Act and is therefore covered under the Act. It is also a public entity as defined in Title II of the Americans with Disabilities Act.

3. This is a Complaint for damages. The Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as this action is brought under Title II of the Americans

with Disabilities Act, 42 U.S.C. §12101 *et. seq.*; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794. Both the ADA and § 504 prohibit discrimination and retaliation against persons with disabilities, or against persons who advocate on behalf of a student with a disability.

4. Venue is proper under 28 U.S.C. §1391 because the matters at issue occurred in Bedford County which falls within the jurisdictional limits of this Court.

5. Administrative exhaustion has already been satisfied under the IDEA for Plaintiffs' *educational* relief. Plaintiffs timely filed a state administrative due process claim and an administrative hearing officer was assigned to the case. Per the IDEA, the parties attended a mediation where they resolved the educational disputes. The administrative hearing officer entered a Consent Decree on December 7th, 2015. Accordingly, administrative prerequisites under IDEA have been exhausted. Now, this is an action for *non-educational* relief (damages) which could not be awarded in due process under the IDEA.

### III. FACTS

6. **"Disability."** J.B. is a child with a "disability," as that term of art is defined by the ADA and Section 504.[1] He is regarded as disabled because he has a medical impairment (autism spectrum disorder). Additionally, he has an actual disability because the impairment substantially limits J.B. in various major life activities: thinking, communicating, learning, processing information, and perceiving. These

---

[1] This action arises under Title II of the amended ADA, with an effective date of January 1, 2009, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA.

limitations are also long-standing, thereby constituting a "history" or "record of" a disability. Thus, he is covered under all prongs of the ADA and Section 504.

7.  **Protected Activity.**  For over two years, in 2013 and 2014, M.B. engaged in protected advocacy for her son by requesting meetings with school officials, sending correspondence and recommendations from J.B.'s physician, and seeking for J.B. to have a Functional Behavior Assessment (FBA) performed with a Behavior Intervention Plan (BIP) implemented.[2]  Throughout 2013 and 2014, M.B. also advocated for her son to have a consistent full-time aid as well as ABA therapy.  M.B. provided letters supporting such services from J.B.'s physician as well.

8.  In 2014-2015, Defendant moved J.B. to a different school, Southside Primary, with a new principal, Ms. Reita Vaughn.

9.  **Adverse Action (Discrimination and Retaliation).**  On October 8, 2014, Ms. Vaughn requested police officer presence at the school in order to reinforce, intimidate, and/or punish J.B. for allegedly disobeying her command.  As she put it to the police dispatch:  "If I say something, by George, I mean it."

10.  Principal Vaughn did not advise J.B.'s parents of her (discriminatory or retaliatory) acts, or that she had called the police.  To the contrary, the parents were informed J.B. had a "good day" all day.

11.  On October 9, 2104, Principal Vaughn again called the police with respect to J.B., again to intimidate and/or punish him.  Referring to J.B. as an "unruly child," she claimed police presence was again necessary.

---

[2]  The BIP is a roadmap for behavioral interventions in the school setting—it tells educators how to engage the child positively, how to understand the function behind the misbehavior, and to make appropriate changes so that the child with the disability will react favorably and replace the negative behavior.

12. That same day, J.B.'s teacher, Molly Young, called J.B.'s mother and advised her to immediately come to the school. When M.B. arrived, she found J.B. sobbing with his shirt pulled over his head. A uniformed and armed police officer stood nearby in the same office.

13. M.B. questioned Principal Vaughn, who claimed she had not called the police at all, and that the policeman was *already present at the school* as part of a normal walkthrough. According to Principal Vaughn, J.B. was already crying and the officer just stopped by to see if he could assist. She made no mention of the previous day of October 8, 2014.

14. Principal Vaughn's version is not accurate. In truth, she engaged in intentional or deliberately indifferent action against a child with a disability, purposefully calling the police upon him to intimidate and punish him due to manifestations of his disability and/or in retaliation for his mother's protected advocacy of his rights. These actions were directly contrary to the care required under J.B.'s Behavioral Intervention Plan.

15. Principal Vaughn would continue to falsely claim she did not call the police officer to come to the school for J.B. in subsequent IEP meetings with M.B. and Jo.B.

16. The police presence caused J.B. to suffer trauma, fright, humiliation and anxiety. He feared even going to the school and began to tremble and rock if the car he was riding in even approached the school premises. He cried at home. And he begged his parents not to return him.

17. J.B.'s parents obtained professional help and J.B. was placed on homebound services for a period of time—i.e. a teacher coming directly to J.B.'s home. While on homebound, Principal Vaughn attempted to punish J.B. further, alleging he was "truant" from school, even though it was Principal Vaughn's conduct which had denied

4

J.B. the equal access to the school and need for homebound services. This caused emotional harm and costs to the parents in terms of fighting the alleged "truancy" claims.

18. Only after ten months did J.B. return to school—in a different school altogether. While strictly educational relief has been resolved through the IDEA, this is now an action for damages, wherein Plaintiffs seek appropriate and reasonable compensation for the emotional harm (anxiety, worry, fear, trauma) to J.B., along with the parents' own emotional distress and costs.

19. "Discrimination" is alleged under Section 504 and Title II of the ADA because Plaintiff was entitled to reasonable accommodations for his disability in the form of appropriate behavioral responses which consider the nature of his disability (and his BIP). Instead, these behavioral accommodations were denied and police action was unnecessarily taken against J.B. which caused him emotional harm. Thus, J.B. was treated differently because of his disability and he was denied accommodations to which he was entitled.

20. "Retaliation" is alleged because Plaintiffs engaged in constitutionally and statutorily protected activities of advocacy for J.B.'s rights under federal law; adverse action was taken against them in the form of calling the police on J.B. *twice* to intimidate and scare J.B., a child diagnosed with autism and who cannot handle such trauma, fright, and humiliation; these actions would deter a person of ordinary firmness; and such averse actions were in fact causally connected to the protected conduct identified above.

21. These actions taken against Plaintiff were done so knowingly, intentionally, in bad faith, and/or with deliberate indifference to J.B.'s rights.

5

Case 4:16-cv-00008-TRM-SKL   Document 1   Filed 02/03/16   Page 5 of 6   PageID #: 5

## IV. LEGAL CLAIMS

22. The foregoing facts are incorporated.

23. Plaintiffs bring the following legal claim:

    **A.** **Section 504 and Title II of the ADAAA. Discriminatory treatment including disability harassment, and Retaliation/ Retaliatory Harassment.**

24. A jury is respectfully demanded.

    **WHEREFORE, premises considered,**

Plaintiffs request process be served, that Defendants be compelled to timely answer, that Plaintiffs be awarded reasonable and appropriate damages, and available attorneys fees and costs under Section 504 and the ADAAA.

    Respectfully Submitted,

    **GILBERT RUSSELL McWHERTER SCOTT & BOBBITT, PLC**

    /s Justin S. Gilbert
    JUSTIN S. GILBERT (TN Bar No. 017079)
    100 W. Martin Luther King Blvd., Suite 504
    Chattanooga, TN 37402
    Telephone: 423-499-3044
    Facsimile: 731-664-1540
    jgilbert@gilbertfirm.com

    JESSICA F. SALONUS (TN Bar No. 28158)
    101 North Highland
    Jackson, TN 38301
    Telephone: 731-664-1340
    Facsimile: 731-664-1540
    jsalonus@gilbertfirm.com

    *ATTORNEYS FOR PLAINTIFFS*